UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KRISTINA LOUGHLIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VI-JON, INC.,<br><br>Defendant. | Case No. 1:20-CV-11555<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Kristina Loughlin ("Plaintiff"), on behalf of herself and all others similarly situated, hereby submits the following Class Action Complaint ("Complaint") against Vi-Jon, Inc. ("Vi-Jon" or "Defendant"), upon personal knowledge as to her own acts and status, and upon information and belief, the investigation of his counsel, and the facts that are a matter of public record, as to all other matters, alleges as follows:

## NATURE OF THE ACTION AND FACTUAL ALLEGATIONS

1. Consumers rely on hand sanitizers to "kill germs" particularly during the existing coronavirus epidemic.

2. It is important that manufacturers disseminate accurate information to consumers about the effectiveness of their hand sanitizer products to "kill germs."

3. Defendant manufactures, advertises, markets, labels, and distributes a variety of hand sanitizers which are sold under store brand names including (a) CVS Health, (b) Walgreen Co. and (c) equate (Walmart") and Defendant also sells hand sanitizers under the brand name "germ x" (all of the foregoing referred to hereinafter collectively as the "Products")

1

4. The Products contain ethyl alcohol as their primary active ingredient.

5. The Products are sold in various sizes and configurations and each bears the representation "kills 99.99% of germs", "kills 99.99% of harmful germs", and/or "kills more than 99.99% of germs". These representations appear in prominent font on the primary, front-facing label of the Products (the "Representation").

6. The CVS Products state "kills 99.99% of germs" and "KILLS 99.99% OF GERMS".

7. The Walgreen Products state "kills 99.99% of germs" and "kills more than 99.99% of germs."

8. The equate/Walmart Products state "KILLS 99.99% OF GERMS".

9. The germ-x Products state "kills more than 99.99% of germs" and "kills 99.99% of germs".

10. The term "germ(s)" is commonly understood to refer to microscopic organisms that cause diseases.

11. Mirriam-Webster defines the term "germ" in its on-line dictionary located at https://www.merriam-webster.com/dictionary/germs as "a small mass of living substance capable of developing into an organism or one of its parts".

12. The Products do not "kill 99.99" of organisms that cause disease.

13. The Products are ineffective or substantially ineffective to kill a variety of microbes (i.e. germs) including norovirus and other non-enveloped viruses.

14. There are approximately 25 different strains of norovirus that affect humans.

15. The Products are ineffective or substantially ineffective to kill the following, among other germs/bacteria: (a) at least three strains/types *of poliovirus*, (b) numerous strains/types of

*polyomavirus* which can cause severe infections in humans particularly for immune deficient or immune compromised individuals, (c) numerous strains/types of human papillomavirus ("*HPV*"), (d) *hepatitis A* which is a contagious disease that causes a variety of symptoms including liver damage, fatigue, and nausea and vomiting, and (d) *influenza A*.

16. The Products are ineffective against more than .01% of "germs" and therefore the Representation is false and misleading.

17. At present, there are no reliable studies that support the Representation.

18. By each Representation, reasonable consumers are misled to believe that proper use of the Product will prevent all diseases and will kill 99.99% of *all* germs that cause *all* illnesses in human beings.

**FDA Treatment Concerning the Products**

19. The Food and Drug Administration (the "FDA") recently issued a warning letter (the "FDA Warning Letter")[1] to Gojo, Inc., a manufacturer of an *alcohol-based* hand sanitizer, regarding its Purell brand name product, which detailed Gojo's false, deceptive and dangerous marketing of the Purell product-line which included the unproven representation that Purell "Kills more than 99.99% of most common germs… ."

20. Among other things, the FDA Warning Letter states that it is not aware of "any adequate and well-controlled studies demonstrating that killing or decreasing the number of bacteria or viruses on the skin by a certain magnitude produces a corresponding clinical reduction infection or disease caused by such bacteria or virus."

21. Further, the "FDA promulgated a news release on April 27, 2020 stating, in pertinent part, as follows: **"…hand sanitizers are not proven to treat COVID-19… ."**

---

[1] Warning letter at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/gojo-industries-inc-599132-01172020 (last viewed May 27, 2020).

3

22. In 2019, the FDA issued a Final Rule deferring regulatory action for ethyl alcohol, the primary active ingredient in the Products.

23. Further, the FDA stated that it was deferring ruling on whether ethyl alcohol is generally recognized as safe and effective ("GRASE").

24. The FDA has not yet ruled on or taken any regulatory action for hand sanitizers containing ethyl alcohol and it is possible that no such ruling will be forthcoming.

25. Accordingly, the Products do not have a monograph status and ethyl alcohol has not been found to be GRASE by the FDA.

**Plaintiff and Class Members Purchased Products to Their Detriment and Suffered Loss**

26. Plaintiff and Class Members, defined below, purchased the Products to their detriment and suffered monetary damages.

**Plaintiff's Purchase**

27. Plaintiff purchased one or more of the Products during the class period for personal and family use, including purchasing on March 30, 2020 a product manufactured by Vi-Jon and labeled by Vi-Jon as follows: "germ-*X* moisturizing aloe hand sanitizer".

28. Plaintiff's product contained the following representation: "KILLS 99.99% OF GERMS". A representative copy of the front panel label of Plaintiff's germ-*X* Product is as follows:

4



29.     The price paid by Plaintiff was representative of the price paid by similarly situated consumers who purchased the Products.

30.     Plaintiff relied on Defendant's Representation in purchasing the germ-*X* Product.

31.     At the time she purchased the germ-x Product, Plaintiff did not know, and did not have reason to know, that the Representation was false, misleading and deceptive.

5

32. Plaintiff would not have purchased the germ-*X* Product, or would have purchased it on other more favorable terms, if she had known the truth about the Representation.

33. It is possible that Plaintiff would purchase one or more of the Products in the future if the label representations are truthful and accurate.

34. In any event, irrespective of the possibility that Plaintiff would purchase the Products in the future, Plaintiff is entitled to injunctive relief to cure the Representation pursuant to M.G.L. c. 266, § 91.

**Nature and Effect of Representation**

35. Each Representation on the Products purchased by Plaintiff and the Class Members was the same.

36. Each Representation is harmful, false, misleading and deceptive to consumers because it gives the misleading impression that using the Product will prevent all diseases and all other human illnesses.

37. Each Representation has allowed and continues to allow Defendant to unlawfully increase its sales of the Products and gives Defendant a competitive edge over many other products in the marketplace including, by example, products that merely state that they reduce bacteria on the skin.

38. The Defendant's conduct caused Plaintiff, and others similarly situated, to suffer damages requiring disgorgement and restitution as well entitling them to injunctive relief and other equitable relief.

39. The Products are unable to provide the outcomes promised by the Defendant in the Representation, but through each Representation, Defendant cause consumers to defer or forgo

taking other concrete measures at preventing diseases and other human illnesses, increasing their risk of contracting the same.

40. The Defendant's marketing and sale of the Products with the Representation is designed to – and did – to the knowledge of Defendant, deceive, mislead and defraud consumers and all other purchasers of the Product.

41. The Defendant's false, deceptive and misleading marketing and sale of the Products has enabled Defendant to sell more of the Products and at higher prices per unit than it would have in the absence Defendant's misconduct.

42. Defendant knew or should have known that reasonable consumers would consider the Representation material in deciding to purchase the Products.

43. Defendant's Representation is and continues to be likely to mislead reasonable consumers.

44. Defendant's misconduct alleged above results in additional revenue and/or profits inuring to the benefit of Defendant at the expense of consumers and other purchasers of the Product.

45. The value of the Product that Plaintiff and other similarly situated purchasers of the Products purchased was materially less than its/their value as represented by the Defendant.

46. Had Plaintiff and other members of the Class (identified below) known the truth, they would not have bought the Product(s), or would have paid less for it/them in each instance.

47. As a result of each false and misleading Representation, each Product is sold at a premium price compared to other similar products sold in a way that is not misleading.

48. As a result of Defendant's false and deceptive claims, consumers and other purchasers of the Product--including Plaintiff and the other members of the Class--have purchased a product that has not been proven to perform as advertised.

**Purpose of this Action**

49. This action seeks to obtain redress for purchasers of one or more of the Products, and to enjoin Defendant's deceptive and unlawful advertising as well as to obtain other equitable relief and injunctive relief. Plaintiff brings this lawsuit against Defendant on behalf of herself and all other similarly situated purchasers of one or more of the Products in the United States alleging claims for unjust enrichment and violations of M.G.L. c. 266, § 91. Plaintiff intends to amend this complaint to add claims under M.G.L. c. 93A, § 2 should Defendant not make a reasonable offer to resolve this case in accordance the requirements of M.G.L. c. 93A.

## JURISDICTION AND VENUE

50. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action in which (1) there are more than 100 members in the proposed class and proposed subclass; (2) members of the proposed class and subclass have a different citizenship from Defendant; and (3) the aggregate claims of Plaintiff and members of the Class exceed the sum or value of $5,000,000, exclusive of interest and costs.

51. This Court has personal jurisdiction over the Defendant because the Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets in Massachusetts through the sale and distribution of the Products in Massachusetts and through the privilege of conducting business in Massachusetts via on-line sales of the Products and/or otherwise.

52. Venue is proper in this District under 28 U.S.C. § 1391(b)(2). Defendant conducts substantial business throughout Massachusetts and in this District, and a substantial part of the

events, acts and transactions giving rise to the claims occurred in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant engages in continuous and systematic business activities in Massachusetts and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

53.     Plaintiff is a resident of Plymouth County, Plymouth Massachusetts, who purchased the germ-x Product during the class period, on March 30, 2020, and was exposed to Defendant's deceptive and misleading statements (i.e., the Representation) in Massachusetts through purchase of Defendant's Product.

54.     Defendant Vi-Jon, Inc. is organized and existing under the laws of the State of Missouri, having its principal place of business in St. Louis, Missouri. Defendant and its agents manufacture, market, distribute, label, advertise and sell the Products. At all times material hereto, Defendant conducted business in the United States, including Massachusetts, through its services as manufacturer and supplier of the Products to various stores in Massachusetts and by, among other things, maintaining agents for the customary transaction of business in Massachusetts.

55.     Plaintiff is informed and believes, that at all times material to the allegations of this Complaint, Defendant's agents were acting within the course and scope of such agency on behalf of Defendant and that the unfair, unlawful, false, deceptive and misleading advertising and labeling of the Products was prepared by and/or approved by Defendant and its agents and such Products were disseminated by Defendant and its agents with the Representation.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3) and (c)(4) on behalf of herself and on behalf of all others similarly situated who are members of two Classes defined below:

9

> All citizens of the United States who, within the relevant statute of limitations periods, purchased one or more of Defendant's Products (the "Nationwide Class").
>
> All citizens of Massachusetts who, within three years prior to the filing of the initial complaint in this action, purchased one or more of Defendant's Products ("Massachusetts Subclass").

57. Excluded from the Class are the following: (a) Defendant and its assigns, successors and legal representatives; (b) any entity in which Defendant has a controlling interest; (c) federal, state and local governments and their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and or subdivisions; (d) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (e) any judicial officer presiding over this matter.

58. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, and/or to propose or eliminate sub-classes, in response to facts obtained through discovery, legal arguments advanced by Defendant, or otherwise.

59. Each Class meets the criteria for certification under Rule 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

60. **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1)**. As the proposed members of each Class include hundreds if not thousands of persons that are widely geographically disbursed, there is a significant risk of inconsistent or varying adjudications with respect to individual members of each Class that would establish incompatible standards of conduct for each Defendant.

**Rule 23(a) and (b)(3)**

61. *Numerosity*. The members of each Class are so numerous that joinder of all members would be impracticable. Plaintiff is informed and believes, and on that basis alleges, that

10

each Class contains hundreds if not thousands of members. The precise number of Class members is unknown to Plaintiff.

62.     ***Existence and Predominance of Common Questions of Law and Fact***.  Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

    (a)    Whether Defendants had adequate substantiation for the Representation prior to making it;

    (b)    Whether the Representation is true, or is misleading, or reasonably likely to deceive;

    (c)    Whether the Defendant's alleged misconduct constitutes violations of the laws asserted herein;

    (d)    Whether Defendant is engaged in unfair and/or deceptive advertising with respect to the Product;

    (e)    Whether Defendant has been unjustly enriched;

    (f)    Whether Plaintiff and members of each Class have been injured by Defendant's conduct; and

    (g)    Whether Plaintiff and members of each Class are entitled to relief, and the amount and nature of such relief, including equitable or injunctive relief.

63.     ***Typicality***. The claims of Plaintiff are typical of the claims of the members of each Class because, among other things, Plaintiff, like all Class members of each Class were injured through the uniform misconduct described above and through the purchase of one or more of the Products. Defendant's unlawful, unfair and/or deceptive actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff's and Class members' claims arise from the same uniform practices and course of conduct and are based on the same legal theories.

64. *Adequacy of representation*. Plaintiff will fairly and adequately protect the interests of each Class, and has retained counsel experienced in class and complex litigation. Plaintiff has no interests antagonistic to members of either Class, and Defendant does not have any defenses unique to Plaintiff.

65. *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for the following reasons:

    (h)    It is economically impractical for members of each Class to prosecute individual actions;

    (i)    Each Class is readily definable; and

    (j)    Prosecution as a class action will eliminate the possibility of repetitious litigation.

66. A class action will cause an orderly and expeditious administration of the claims of each Class. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

67. Absent a class, members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant unlawfully profits from and enjoys its ill-gotten gains.

68. **Declaratory Relief. Fed. R. Civ. P. 23(b)(2)**. Class certification is also appropriate under Rule 23(b)(2) because each Defendant through its uniform conduct has acted or refused to act (and continues to act or refused to act) on grounds that apply generally to each Class as a whole, thus making final injunctive relief or corresponding declaratory relief appropriate respecting each Class as a whole.

69. Plaintiff does not anticipate any undue difficulty in the management of this litigation.

70. Plaintiff and members of each Class expressly exclude and will exclude any causes of action relating to personal injury or other bodily harm arising from either Defendant's conduct.

## FIRST CLAIM

**(For Violations of Untrue and Misleading Advertising under Mass. Gen. Laws c. 266, § 91)**

67. Plaintiff incorporates the above allegations by reference as if set forth herein in full.

68. Defendant's labeling, marketing, advertising, and promotion of the Products is untrue, deceptive, and/or misleading, in violation of Mass. Gen. Laws c. 266, § 91.

69. At all times relevant to this action, Defendant knew, or could, upon reasonable investigation, have ascertained, that its labeling, marketing, advertising, and promotion of the Products was untrue, deceptive, and/or misleading.

70. Defendant's untrue, deceptive, and/or misleading labeling, marketing, advertising, and promotion of the Products has continued throughout the Class Period and is continuing as of the present date.

71. As a purchaser of one of the Products who was damaged by Defendant's untrue, deceptive and/or misleading advertising (in that Plaintiff and the other members of each Class purchased a product that did not conform to the representations made about the Product by Defendant), Plaintiff is entitled to and does bring this action to seek all available remedies under Mass. Gen. Laws c. 266, § 91, including injunctive relief.  The injunctive relief would include an order directing Defendant to cease its false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

## SECOND CLAIM

### (Unjust Enrichment)

81. Plaintiff incorporates the above allegations by reference as if set forth herein in full.

82. Defendant sold the Products based on the advertised ability of the Products to kill 99.99% of all germs, as further described above. However, the Product does not have such capabilities, as further described above.

83. By purchasing at least one of the Products during the class period, Plaintiff and the members of each Class have conferred a significant monetary benefit on Defendant, which benefit is known and has been appreciated by Defendant.

84. Retention by Defendant of the benefit conferred by Plaintiff and the members of each Class would, under the circumstances, be inequitable.

85. Plaintiff, on behalf of herself and the members of each Class, seeks restitution or, in the alternative, imposition of a constructive trust on the funds inequitably received and retained.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of each Class, prays for judgment against Defendant as follows:

A.  An Order certifying this case as a class action and appointing Plaintiff and her counsel to represent the members of each Class;

B.  An Order awarding restitution and disgorgement of Defendant's revenues from sale of the Product to Plaintiff and each member of each Class;

C.  An Order awarding equitable relief, including: enjoining Defendant from continuing the unlawful false advertising practices as set forth herein, directing Defendant to retrieve

existing false and misleading advertising and promotional materials, directing Defendant to engage in a corrective advertising campaign, directing Defendant to identify, with Court supervision, victims of their conduct and pay them restitution, and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

D. An Order awarding the greater of actual damages (including double or treble damages) or statutory damages, as allowable by law;

E. An Order awarding attorneys' fees and costs to Plaintiff and the other member of each Class; and

F. Such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated:   August 18, 2020

Respectfully submitted,

/s/ Edward L. Manchur
Edward L. Manchur (BBO #316910)
P.O. Box 3156
Peabody, MA 01960
Phone: (978) 333-1013
manchurlaw@gmail.com
***Counsel for Plaintiff Kristina Loughlin***

15