UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KRISTINA LOUGHLIN,               )
Individually and on             )
Behalf of All Others            )
Similarly Situated ,            )
    Plaintiffs,                 )
                      )   C.A. No. 20-11555-MLW
                      )
       v.                        )
                      )
VI-JON, LLC,                    )
    Defendant.                  )

## MEMORANDUM AND ORDER

WOLF, D.J.                                        March 29, 2024

## TABLE OF CONTENTS

I. SUMMARY ............................................................... 2

II. PROCEDURAL HISTORY ................................................... 5

III.  THE MOTION FOR SUMMARY JUDGMENT .................................. 7

  A.   The Summary Judgment Standard ................................. 7

  B.   Chapter 93A ................................................... 9

  C.   The Facts .................................................... 12

  D.   Analysis ..................................................... 16

IV. THE CLASS CERTIFICATION MOTION ..................................... 20

  A.   The Class Certification Standard ............................. 23

  B.   Analysis ..................................................... 24

    1.   Rule 23(b)(3) ............................................ 24

      a.   Legal Standard ....................................... 24

      b.   Analysis ............................................. 26

    2.   Rule 23(a) .............................................. 38

      a.   Numerosity ........................................... 38

      b.   Commonality and Typicality ........................... 39

      c.   Adequacy ............................................. 41

V. ORDER ............................................................... 45

I.   SUMMARY

Plaintiff Kristina Loughlin has brought this putative class action on behalf of herself and Massachusetts consumers who, within four years of the initial filing on August 26, 2020, purchased hand sanitizer ("Germ-X" or the "Product")[1] manufactured by defendant Vi-Jon, LLC ("Vi-Jon"). The front label of each Germ-X bottle states that Germ-X "kills 99.99% of germs*"[2] (the "Representation"). The back label includes an asterisked more limited claim that Germ-X kills "*99.99% of many common harmful germs."

Loughlin alleges that the Representation is deceptive and leads reasonable consumers to believe that Vi-Jon's Products are more effective at killing germs than they actually are. Loughlin also alleges that the deceptive Representation on Vi-Jon's Product labels caused her and members of the class she seeks to represent to buy the Products or pay more for them than they otherwise would. Therefore, Loughlin alleges that Vi-Jon has violated M.G.L.

---

[1] Vi-Jon manufactures hand sanitizer under the "Germ-X" brand name, as well as under various store-brand and private label brand names. All hand sanitizers manufactured by Vi-Jon are referred to as the "Products."

[2] The Representation is written in capital letters on the Products, but it is written in lowercase letters throughout this Memorandum and Order.

2

c. 93A, §2, which prohibits false or deceptive acts or conduct in the sale of goods.

After discovery, Vi-Jon filed a motion for summary judgment and Loughlin filed a motion for class certification. A hearing was held on these motions on March 13, 2024. In addition, Vi-Jon has filed motions to exclude three of Loughlin's proposed experts. Loughlin also has filed a motion to compel discovery relating to a longer class period than the one she asked to be certified in her Second Amended Complaint (the "SAC").

For the reasons described in this Memorandum, the court is denying Vi-Jon's motion for summary judgment. For the purposes of this case, to establish a valid Chapter 93A claim, Loughlin is required to prove that: (1) the Representation on the label of Vi-Jon's Products was deceptive; (2) Loughlin suffered an injury; and (3) the injury was caused by Vi-Jon's deception. The issues of whether the Representation is deceptive and, if so, whether it caused Loughlin to suffer any injury, are objectively evaluated from the perspective of a reasonable consumer, not in terms of Loughlin's subjective understanding and motivation.

To establish injury under Chapter 93A, Loughlin must show that she suffered actual economic harm, distinct from Vi-Jon's deceptive act. This element is not evaluated under an objective

3

standard. Instead, Loughlin must produce evidence demonstrating that she personally suffered actual economic harm.

Vi-Jon's Motion for Summary Judgment is being denied because the evidence is sufficient for a reasonable jury to find that the Germ-X label is deceptive and that, as a result, Loughlin was enticed to buy a six-pack of Germ-X for $15.84. The jury could also find that she is now left with two bottles that she would not have bought had she not been misled into believing that Germ-X kills 99.99% of germs found on hands and, therefore, suffered economic loss in the form of the cost of those two bottled--about $5.30.

Loughlin's motion to certify a class, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), of Massachusetts residents who purchased Germ-X between August 26, 2016 and the filing of the original complaint on August 26, 2020 is being denied.

Loughlin estimates that there are tens of thousands, if not more, members of the putative class. The issues of whether the Products' label is deceptive, and whether it caused any actual loss suffered by a member of the class, are amenable to being decided on a class-wide basis because they are judged from the perspective of a reasonable consumer. However, the question of actual loss must be decided based on facts unique to each class

member. Vi-Jon intends to exercise its right to challenge whether many putative class members have suffered an injury-in-fact, as required to be included in the class. It is foreseeable that Vi-Jon will raise thousands of plausible individual challenges. Loughlin does not assert, and the court does not find, that there is any fair and feasible way to resolve these challenges before trial.. Therefore, the court does not find that "questions of law or fact common to class members predominate over any questions affecting only individual members" as is required to certify a class under Rule 23(b)(3). Accordingly, Loughlin's motion for class certification must be denied.

As this case now involves only Loughlin's individual claim, the parties are being ordered to confer and, by May 1, 2024, report whether they have reached an agreement to resolve this case and, if not, propose a schedule for its continued litigation.

II. PROCEDURAL HISTORY

Loughlin filed a two-count Complaint on August 26, 2020, alleging that Vi-Jon had deceptively labelled its Products, and was liable for unjust enrichment and for violating M.G.L. c. 266, §91 (Dkt. No. 1). Before Vi-Jon responded to the Complaint, Loughlin filed an Amended Complaint (the "FAC") on November 5, 2020 (Dkt. No. 6). The FAC maintained Loughlin's unjust enrichment

claim and alleged that Vi-Jon violated M.G.L. c. 93A, §2, rather than M.G.L. c. 266, §91. See FAC ¶¶112-24.

Vi-Jon moved to dismiss the FAC, arguing, among other things, that Loughlin lacked standing and that the FAC failed to state a claim (Dkt. Nos. 20, 21). Loughlin opposed Vi-Jon's motion (Dkt. No. 33). On September 22, 2021, the court held a hearing on Vi-Jon's motion to dismiss (Dkt. No. 48). The court allowed Vi-Jon's motion to dismiss Loughlin's unjust enrichment claim but denied its motion to dismiss Loughlin's Chapter 93A claim. See Sep. 22, 2021 Tr. 50:21-51:10 (Dkt. No. 52). Citing the First Circuit's decision in Dumont v. Reily Foods Co., 934 F.3d 35 (1st Cir. 2019), the court found that a reasonable consumer might be misled by the front-label Representation into believing that Vi-Jon's Products kill 99.99% of all germs found on hands, rather than 99.99% of "many common harmful germs and bacteria." See Sep. 22, 2021 Hr'g Tr. 58:3-59:24. However, the court also decided that a reasonable consumer would only expect Vi-Jon's Products to kill germs found on hands, rather than all germs. See id. 55:22-56:1. Therefore, it ordered Loughlin to file a second amended complaint consistent with that ruling. See id.

Loughlin filed her Second Amended Complaint (the "SAC") (Dkt. No. 55). Vi-Jon filed a motion to dismiss the SAC (Dkt. No. 58), which Loughlin opposed (Dkt. No. 60). The court denied Vi-Jon's

second motion to dismiss, finding that it was "largely duplicative" of its first motion to dismiss. Mem. & Order at 9 (Dkt. No. 67).

The parties filed several motions while the case was referred to the Magistrate Judge for pretrial purposes. Loughlin filed a motion to compel discovery (Dkt. No. 80) and a motion for class certification (Dkt. No. 95). Vi-Jon filed a motion for summary judgment (Dkt. No. 83) and motions to exclude plaintiffs' proposed damages, microbiology, and survey experts (Dkt. Nos. 116, 119, 122). The court decided to address these motions itself rather than wait to receive a Report and Recommendation from the Magistrate Judge.

The court held a hearing on March 13, 2024 that primarily addressed Vi-Jon's motion for summary judgment and Loughlin's motion for class certification and motion to compel. See Order (Dkt. No. 161). After the March 13 hearing, the parties filed supplemental memoranda in support of their respective positions (Dkt. Nos. 174, 175).

III. THE MOTION FOR SUMMARY JUDGMENT

A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual

dispute, therefore, precludes summary judgment if it is "material" and "genuine." See Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986).

A fact is "material" if, in light of the relevant substantive law, "it has the potential of determining the outcome of the litigation." Maymi v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008); see Martinez-Rodriguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

To determine if a factual dispute is "genuine," the court must assess whether "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Chadwick v. WellPoint, Inc., 561 F.3d 38, 43 (1st Cir. 2009) (quoting Anderson, 477 U.S. at 248); Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009). In making this determination, the court must "constru[e] the record in the light most favorable to the non-moving party." Douglas v. York Cnty., 433 F.3d 143, 149 (1st Cir. 2005). The record should not, however, be scrutinized piecemeal. Rather, it must be "taken as a whole." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In addition, evidence submitted in an inadmissible form may be considered only if it could be presented in a form that would be

admissible at trial. See Fed. R. Civ. P. 56(c)(2); Gorski v. N.H.
Dep't of Corr., 290 F.3d 466, 475-76 (1st Cir. 2002); Vazquez v.
Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).

   B. Chapter 93A

   Chapter 93A prohibits "unfair or deceptive acts or practices
in the conduct of any trade or commerce." M.G.L. c. 93A, §2(a). A
plaintiff must establish three elements to prevail on a Chapter
93A claim: (1) a deceptive act or practice on the part of the
defendant; (2) an injury or loss suffered by the plaintiff; and
(3) a causal connection between the defendant's deceptive act or
practice and the plaintiff's injury. See Casavant v. Norwegian
Cruise Line, Ltd., 919 N.E.2d 165, 168-69 (Mass. App. Ct. 2009),
aff'd, 952 N.E.2d 908 (Mass. 2011); Hershenow v. Enterprise Rent-
A-Car Co. of Bos., Inc., 840 N.E.2d 526, 532 (Mass. 2006).

   A statement "is deceptive when it has the capacity to mislead
consumers, acting reasonably under the circumstances, to act
different from the way they otherwise would have acted (i.e., to
entice a reasonable consumer to purchase the product)." Dumont v.
Reily Foods Co., 934 F.3d 35, 40 (1st Cir. 2019) (quoting Aspinall
v. Philip Morris Cos., Inc., 813 N.E.2d 476, 488 (Mass. 2004)).
The front packaging of a product may provide a reasonable consumer
"sufficient assurance so as to see no need to search the fine print
on the back of package." Id.; see also Williams v. Gerber Products

9

Co., 552 F.3d 934, 939 (9th Cir. 2008); O'Hara v. Diageo-Guinness, USA, Inc., 306 F.Supp.3d 441, 462 (D. Mass. 2018) (Wolf, J.), on reconsideration, 370 F.Supp.3d 204 (D. Mass. 2019). Moreover, advertisements "need not be totally false in order to be deemed deceptive in the context of [Chapter] 93A." Aspinall, 813 N.E.2d at 487. An advertisement "may consist of a half truth, or even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information." Id.

"Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law." Id. at 54 (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)). When it is a "close question" whether a product label is deceptive, the First Circuit has held that it is a question best left to a jury. Dumont, 934 F.3d at 41.

Under Chapter 93A, injury "means economic injury in the traditional sense." Rule v. Fort Dodge Animal Health, Inc., 607

F.3d 250, 255 (1st Cir. 2010). Paying for a product whose price was artificially inflated by deceptive advertising is an economic injury cognizable under Chapter 93A. See Shaulis v. Nordstrom, Inc., 865 F.3d 1, 12 (1st Cir. 2017); O'Hara, 306 F.Supp.3d at 458. Therefore, the First Circuit has found economic injury where a plaintiff overpaid for eyedrops due to deceptive conduct because "[a]n out-of-pocket loss of money . . . constitutes undisputed harm to the plaintiff . . . [because it] is the prototypical concrete harm." Gustavsen v. Alcon Labs., Inc., 903 F.3d 1, 7, 8 (1st Cir. 2018).

However, a plaintiff's bare assertion that he or she paid a "price premium" because a defendant engaged in deceptive conduct does not establish a per se economic injury. Rather, a plaintiff must demonstrate that she has "suffered a distinct injury or harm that arises from the claimed unfair or deceptive act itself." Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 746 (Mass. 2013). As the First Circuit has put it, a plaintiff must show "real loss grounded in some objective measure" to satisfy the injury requirement of a Chapter 93A claim. Shaulis, 865 F.3d at 13. The Massachusetts Supreme Judicial Court ("SJC") has held that the injury requirement is also satisfied where products "did not deliver the full anticipated and advertised benefits, and therefore were worth less, as used or owned, than what the plaintiffs had paid."

11

Bellermann v. Fitchburg Gas & Elec. Light Co., 54 N.E.3d 1106,
1112 (Mass. 2016).

"'Plaintiffs need not show proof of actual reliance on a
misrepresentation to recover damages under [Chapter] 93A.'"
Casavant v. Norwegian Cruise Line Ltd., 952 N.E.2d 908, 912 (Mass.
2011) (quoting Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 886
n.12 (Mass. 2008)). Rather, a plaintiff must show "a causal
connection between the deception and the loss and that the loss
was foreseeable as a result of the deception." Id. (quoting
Iannacchino, 888 N.E.2d at 886 n.12). Causation is established
where "the deceptive advertising 'could reasonably be found to
have caused a person to act differently from the way he [or she]
otherwise would have acted.'" Hershenow, 840 N.E.2d at 535
(alteration in original) (quoting Aspinall, 813 N.E.2d at 486).

   C. The Facts

   Unless otherwise noted, the following facts are undisputed.

   Vi-Jon manufactures Germ-X. See Def. Statement of Undisputed
Material Facts ("Def. SUMF") ¶1 (Dkt. No. 85); Pl. Opp. to Def.
Statement of Undisputed Material Facts ("Pl. Opp. to SUMF") ¶1
(Dkt. No. 100). In addition to manufacturing and selling Germ-X,
Vi-Jon manufactures store-brand and private-label hand sanitizer
products for other entities such as CVS and Walmart. See Spector
Decl. in Supp. of Mot. for Class Cert., Ex. 1 (Dkt. No. 97-1 -

Sealed). The front label of each Germ-X bottle states, "kills 99.99% of germs*." Spector Decl. in Opp. to MSJ, Ex. B (Dkt. No. 101-2) (photograph of front label of Germ-X bottle). The back label of each bottle states: "*Effective at eliminating more than 99.99% of many common harmful germs & bacteria in as little as 15 seconds." Spector Decl. in Opp. to MSJ, Ex. C (Dkt. No. 101-3) (photograph of back label of Germ-X bottle). Vi-Jon's store-brand and private-label hand sanitizer products have the same front-label Representation and corresponding back-label statement as their Germ-X products. See Alisa Benson Dep. Tr. 31:17-34:10 (Dkt. No. 97-5).

In March 2020, during the early days of the global COVID-19 pandemic, Loughlin purchased a six-pack of Germ-X on Amazon. See Def. SUMF ¶2; Pl. Opp. to Def. SUMF ¶2. Loughlin saw the Germ-X front label stating "kills 99.99% of germs" when she purchased the Germ-X. See Pl. Add'l SUMF ¶24 (Dkt. No. 99); Def. Resp. to Pl. Add'l SUMF ¶24 (Dkt. No. 107).[3] In August 2020, Loughlin's father asked her whether she had purchased any products manufactured by Vi-Jon. See Loughlin Dep. Tr. 56:23-57:25; 63:3-5 (Dkt. No. 108-

---

[3] There is no evidence concerning whether or not the back label could be seen in the Amazon listing of the six-pack of Germ-X that Loughlin bought. Such evidence is not, however, material to the court's decision concerning summary judgment.

1). Loughlin informed her father that she had purchased Germ-X. See id. 56:25-57:12. Her father set up a three-way call with his friend, Edward Manchur, an attorney. See id. 55:11-58:4. Mr. Manchur, and counsel from KamberLaw LLP, now represent Loughlin and seek to represent the putative class.

Loughlin testified that she stopped using Germ-X after her counsel informed her that the Representation was false and that Germ-X is not 99% effective. See id. 48:20-49:6; 50:5-9. Loughlin still has two of the six bottles of Germ-X that she purchased in March 2020. See id. 36:10-25.

At her deposition, Loughlin testified that she "would not have purchased the Germ-X Products if she knew they only killed 70 percent or less of the germs on her hands." See id. 125:7-20.[4]

---

[4] Loughlin's proffered expert Dr. Elizabeth Fortunato, a microbiologist, opines that Germ-X kills at least 40% and at most 73% of germs found on hands. Decl. of Elizabeth A. Fortunato at 4. Vi-Jon has moved to exclude her testimony, based on the opinion of its expert Ian Van Trump, Ph.D. (Dkt. Nos. 119-121). Loughlin opposes this motion (Dkt. No. 138). The parties' dispute relates largely to the proper definition of "germs."

The First Circuit has held that because motions for summary judgment must be decided on a truncated record, judges must be cautious in excluding expert evidence before trial, including the opportunity for voir dire, and do so only in the most clearcut cases. See Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 188 (1st Cir. 1997). Therefore, "[r]uling on a motion for summary judgment, the district court [is] required to assume that any disputes of material fact—including conflicting opinions offered by competent experts—could be resolved [in the non-moving parties'] favor." Jones v. City of Boston, 845 F.3d 28, 32 (1st

However, Loughlin did not testify that she would have purchased Germ-X on different terms, or at a different price, if she had known that it killed less than 99.99% of all germs that can be found on hands.

Loughlin used Purell hand sanitizer before 2020, and she resumed using Purell after she stopped using the Germ-X that she purchased in March 2020. See id. 39:14-40:11; Def. SUMF ¶18; Pl. Opp. to Def. SUMF ¶18. She brought bottles of Purell to her deposition. Def. SUMF ¶23; Pl. Opp. to SUMF ¶23. Like Germ-X, the front label of one of the Purell bottles stated, among other things, "kills 99.99% of germs*." Def. SUMF ¶24; Pl. Opp. to SUMF ¶24. Loughlin believes that Purell is more effective than Germ-X. See Loughlin Dep. Tr. 63:12-64:2; 68:3-21. However, when asked at her deposition why she believes Purell is more effective than Germ-X, Loughlin replied, "I don't know." Id. 68:19-21. Loughlin

---

Cir. 2016) (emphasis added) (citing Cortes-Irizarry, 111 F.3d at 191).

   This is not a clear-cut case in which the court can at this stage find that Dr. Fortunato is not a competent expert. Therefore, for the purpose of the motion for summary judgment, the court must accept as true her opinion that Germ-X kills  40-73% of germs on hands. However, the issue of whether Germ-X kills no more than 70% of germs on hands is not material to the court's decision to deny the motion for summary judgment. Therefore, the motion to exclude Dr. Fortunato's evidence is being denied without prejudice to reconsideration at trial.

testified that she purchases Purell because, at least in part, she "prefer[s] the smell of it." Id. 26:5-9.

D. Analysis

When viewed in the light most favorable to Loughlin, the record contains evidence from which a reasonable jury could find that she has been a victim of a violation of M.G.L. c. 93A, §2, by Vi-Jon.

First, a reasonable jury could find that the Representation is deceptive. The front-label on each of Vi-Jon's Products states that the Product "kills 99.99% of germs*." Def. SUMF ¶1; Pl. Opp. to Def. SUMF ¶1; Spector Decl. in Opp. to MSJ, Ex. B; Alisa Benson Dep. Tr. 31:17-34:10. The asterisk corresponds to the more limited representation on the back label, which states that Vi-Jon's Products are "*[e]ffective at eliminating more than 99.99% of many common harmful germs & bacteria in as little as 15 seconds." See Spector Decl. in Opp. to MSJ, Ex. C; Alisa Benson Dep. Tr. 31:17-34:10 .

Neither Vi-Jon's expert, Dr. Van Trump, nor Loughlin's expert, Dr. Fortunato, opines that Germ-X kills 99.99% of all germs on hands. See Dkt. Nos. 97-31 (Fortunato Report); 121-4 (Van Trump Report). There is no evidence that Germ-X in fact kills 99.99% of all germs on hands. Therefore, the statement that it does is inaccurate.

16

A reasonable jury could also find the Representation deceptive. As the First Circuit has held, the front packaging of a product might provide a reasonable consumer "sufficient assurance so as to see no need to search the fine print on the back of the package." Dumont, 934 F.3d at 40; see also Williams, 552 F.3d at 939; O'Hara, 306 F.Supp.3d at 462.

Indeed, Loughlin has testified that she noticed the front-label Representation prior to purchasing Germ-X, but that she did not notice the asterisk at the end of the Representation or read the corresponding back-label statement. See Loughlin Dep. Tr. 116:5-117:4. The fact that Germ-X is relatively inexpensive-- Loughlin paid under $16 for six bottles, see id. 78:12-20-- increases the likelihood that a reasonable consumer would not carefully inspect the back label prior to purchasing it. Cf. Dumont, 934 F.3d at 40 (noting that a reasonable consumer might not inspect rear label on coffee package). Therefore, a reasonable jury could find that the Representation is deceptive because it "ha[d] the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." Aspinall, 813 N.E.2d at 488.

A reasonable jury could also find that Loughlin suffered an economic injury because she would not have purchased Germ-X had she known that the Representation was false. Loughlin testified

that she was concerned with contracting illnesses from hand-borne germs. See Loughlin Dep. 123:11-124:8. She also testified that she saw the Representation prior to purchasing Germ-X. See id. 110:14. In addition, Loughlin testified that she stopped using Germ-X after her counsel informed her that the Representation is false. See id. 48:20-49:6. Loughlin still has two unused bottles of Germ-X. See id. 36:10-25. A reasonable jury could, therefore, find that Loughlin has sustained an economic injury because she paid for two bottles of Germ-X that she has not used since learning that Germ-X does not deliver its "full anticipated and advertised benefits." Bellermann, 54 N.E.3d at 1112; see also Rule, 607 F.3d at 253 (indicating that a consumer has suffered an economic injury if she is "still holding a product that is worth less than she paid" (emphasis in original)).

For essentially the same reasons, a reasonable jury could find that the causation element of Loughlin's Chapter 93A claim is satisfied because the deceptive Representation could entice a reasonable consumer to purchase Vi-Jon's Products. See Hershenow, 840 N.E.2d at 535. This element is evaluated by an objective, reasonable consumer standard, and Loughlin is not required to introduce evidence of actual reliance.[5] See Casavant, 952 N.E.2d

---

[5] As noted earlier, Loughlin's expert opines that Germ-X kills 40-73% of all germs on hands and the court must accept that as true

18

at 912. A jury could find that a reasonable consumer purchasing hand sanitizer would purchase the product capable of killing the greatest percentage of germs found on hands. Such a consumer might also elect to purchase one of Vi-Jon's Products over an alternative product based on the Representation's deceptive assurance that Vi-Jon's Product "kills 99.99% of germs*." Therefore, a reasonable jury could find that the Representation induced Loughlin to purchase Germ-X. In other words, "the deceptive advertising 'could reasonably be found to have caused [Loughlin] to act differently from the way [s]he otherwise would have acted.'" Hershenow, 840 N.E.2d at 535 (quoting Aspinall, 813 N.E.2d at 486).

Vi-Jon's argument that Loughlin cannot prove causation because she continues to use Purell, the front label of which also states that it "kills 99.99% of germs*," is not meritorious. See Mem in Supp. of MSJ ("MSJ Mem.") at 8 (Dkt. No. 84); Spector Decl. in Opp. to MSJ, Ex. D (Dkt. No. 101-4) (picture of Purell bottle). Vi-Jon erroneously assumes that Loughlin must prove actual reliance. However, as explained earlier, the causation element of a Chapter 93A claim is assessed by an objective, rather than

---

in deciding the motion for summary judgment. See supra n.4. Although not required, Loughlin offers evidence that she actually relied on the deceptive label, testifying that she would not have purchased Germ-X had she known that it kills less than 70% of all germs on hands. Loughlin Dep. 125:14-20. This too must be accepted as true in deciding the motion for summary judgment.

subjective, standard. See Casavant, 952 N.E.2d at 12. Loughlin is not required to "show proof of actual reliance" on the Representation. Id. (quoting Iannacchino, 888 N.E.2d at 886 n.12). Rather, to establish causation, Loughlin need only prove that the Representation "could reasonably be found to have caused [her] to act differently from the way [s]he otherwise would have acted." Aspinall, 813 N.E.2d at 486. A reasonable jury could find that Loughlin has satisfied that burden.

In view of the foregoing, Vi-Jon has failed to demonstrate that there are no genuine disputes of material fact and that it is entitled to summary judgment as a matter of law. See Fed. R. Civ. P. 56(a). Viewing the evidence in the record in the light most favorable to Loughlin, a reasonable jury could find that she has established all three elements of her Chapter 93A claim. See Douglas, 433 F.3d at 149. Therefore, the court is denying Vi-Jon's Motion for Summary Judgment

IV. THE CLASS CERTIFICATION MOTION

Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) ("Rule 23"), in her Second Amended Complaint Loughlin seeks to certify a class comprised of:

> All consumers in Massachusetts who, within four years prior to the filing of the initial complaint in this action, purchased one or more of Defendant's hand sanitizer products (i.e., the Products).

20

SAC ¶119. The initial complaint was filed on August 26, 2020. Therefore, the putative class includes people who bought Vi-Jon's Products between August 26, 2016 and August 26, 2020.[6] Loughlin also asks the court to appoint her as class representative, and to appoint her attorneys, KamberLaw LLP and the Law Offices of Edward L. Manchur, P.C., to serve as Class Counsel pursuant to Rule 23(g). See Mot. for Class Cert. at 1.

In order to certify the putative class, the court must find that Loughlin has satisfied all of the requirements of Rule 23(a) and (b)(3). Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Therefore, "[i]n considering the propriety of class certification in this case, [this court must] deal with an issue that strikes at the heart of

---

[6] In her motion for class certification, Loughlin asks the court to certify a class of consumers who purchased the Products between August 26, 2016, and the date a class is certified. See Mot. to Certify Class at 1. This proposed class period is nearly twice as long as the period proposed in the SAC. As the court stated at the March 13, 2024 hearing, even if it were to certify a class in this case, the court would not allow Loughlin to file a fourth complaint amending the definition of the proposed class. See Mar. 13, 2024 Hr'g Tr. 56:12-57:2. This case has been pending for more than three years, class discovery is complete, and Vi-Jon would be prejudiced by any amendment. See Foman v. Davis, 83 S.Ct. 227, 230 (1962); Calderon-Serra v. Wilmington Trust Co., 715 F.3d 14, 19 (1st Cir. 2013).

the competing considerations raised by some class actions: the proper treatment of uninjured class members at the class certification stage." In re Asacol Antitrust Litig., 907 F.3d 42 (1st Cir. 2018). As discussed earlier and below, the lynchpin of this analysis is the fact that "[p]roof of injury, also called 'injury-in-fact,' is a required element of a plaintiff's case in an action such as this one." Id. at 51. It is also essential to each putative class member's standing, which is an issue Vi-Jon did not emphasize as a basis for denying class certification. See Transunion LLC v. Ramirez, 141 S.Ct. 2190, 2208 (2021).

In cases such as this, where the putative class is large and foreseeably includes a non-trivial number of uninjured members, the question of class certification has been correctly characterized "as potentially vexing." Asacol, 907 F.3d at 58 (Barron, J., concurring). However, the First Circuit's 2018 decision in Asacol has clarified the framework for deciding such vexing questions.

For the reasons described below, the court finds this case to be analogous in many respects to Asacol, in which the First Circuit found that the district court had erroneously certified the putative class. See id. at 57-58. Therefore, the motion for class certification is being denied.

A. <u>The Class Certification Standard</u>

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541, 2550 (2011) (quoting <u>Califano v. Yamasaki</u>, 99 S.Ct. 2545, 2557 (1979)). Therefore, "a class representative must be part of the class and possess the same interest and <u>suffer the same injury</u> as the class members." <u>Id.</u> at 2550 (emphasis added) (internal quotation marks omitted). A plaintiff seeking to certify a class "must establish the four elements of Rule 23(a) and one of the several elements of Rule 23(b)." <u>Smilow</u>, 323 F.3d at 38; <u>see</u> Fed. R. Civ. P. 23(a)-(b).

"Rule 23(a) requires that: (1) there be numerosity, (2) there be common questions of law or fact, (3) the class representative's claims be typical of the class, and (4) the representative's representation of the class be adequate." <u>In re New Motor Vehicles Canadian Exp. Antitrust Litig.</u>, 522 F.3d 6, 18 (1st Cir. 2008) (citing Fed. R. Civ. P. 23(a)). In addition, in this case Loughlin must satisfy the requirements of Rule 23(b)(3), which states that the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action is superior to other methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

"[W]eighing whether to certify a plaintiff class may inevitably overlap with some critical assessment regarding the merits of the case." New Motor Vehicles, 522 F.3d at 17. As the Supreme Court observed in Wal-Mart Stores, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal-Mart Stores, 131 S.Ct. at 2552 (internal citations omitted).

B. Analysis

   1. Rule 23(b)(3)

     a. Legal Standard

As indicated earlier, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." Smilow, 323 F.3d at 41.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 117 S.Ct. 2231, 2249 (1997). Put differently, "[t]he aim of the predominance inquiry is to test whether any dissimilarity among the claims of class members can be

24

dealt with in a manner that is not inefficient or unfair." Asacol, 907 F.3d at 51 (internal quotation marks omitted). To aid this analysis, Rule 23(b)(3) lists four factors that are relevant to the predominance inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Two additional class certification requirements inform the court's predominance analysis in this case: (1) the proposed class must be ascertainable; and (2) all class members must demonstrate that they have suffered an injury-in-fact.

First, as an implied prerequisite to class certification, "the definition of the class must be 'definite,' that is, the standards must allow the class members to be ascertainable." In re Nexium Antitrust Litig., 777 F.3d 9, 19 (1st Cir. 2015). While a plaintiff is not required to identify every class member prior to class certification, the court "must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." James Wm. Moore et

al., Moore's Federal Practice §23.21(3)(a) (3d ed. 2012) (quoted by Matamoros, 699 F.3d at 139).

Second, a plaintiff must demonstrate that each member of the proposed class suffered an injury-in-fact as an element of both Article III standing and a Chapter 93A claim. See Transunion, 141 S.Ct. at 2208 ("Every class member must have Article III standing in order to recover individual damages"); Shaulis, 865 F.3d at 10-11. A court may certify a class that contains a de minimis number of uninjured members. See Nexium, 777 F.3d at 25. However, it may only do so if it is satisfied that "it will [later] be possible to establish a mechanism for distinguishing the injured from the uninjured class members." Id. at 19. Such a mechanism must be both "'administratively feasible' and 'protective of defendants' Seventh Amendment and due process rights.'" Asacol, 907 F.3d at 52 (quoting Nexium, 777 F.3d at 19).

   b. Analysis

For the reasons explained below, it is foreseeable that defendants will be able to raise "plausible individual challenges" concerning whether many of the thousands of putative class members have suffered an injury. Asacol, 907 F.3d at 52. Loughlin has not addressed the implications of the fact that the proposed class likely contains many uninjured individuals. Rather, she erroneously argues that whether each putative class member

26

suffered an injury from Vi-Jon's deceptive label does not have to be determined individually. See Pl. Supp'l Class Cert. Brief at 8 (Dkt. No. 174) (arguing that "consumers were injured at the moment they spent money to buy the misrepresented Products"). As a result, Loughlin has not argued, let alone proven, that there would be a means to "adjudicate individual issues" that "will be both 'administratively feasible' and 'protective of defendants' Seventh Amendment and due process rights.'" Asacol, 907 F.3d at 52 (quoting Nexium, 777 F.3d, at 19). The court finds that the required individualized process of identifying and excluding uninjured class members would predominate over questions of fact and law common to the proposed class. Therefore, Loughlin has failed to satisfy this essential requirement of Rule 23(b)(3).

Loughlin contends that all consumers who purchased one of Vi-Jon's Products with the Representation that it "kills 99.99% of germs*" have suffered an economic injury because Vi-Jon "charges a premium due to its label Representations." Class Cert. Mem. at 24. In essence, Loughlin argues that all consumers who purchased one of Vi-Jon's Products bearing the Representation have suffered a per se economic injury. However, Loughlin's theory of class-wide economic injury is not valid under current Massachusetts and First Circuit Chapter 93A jurisprudence, which has evolved and been clarified since the SJC decided, in 2004, the case on which

Loughlin principally relies, Aspinall v. Philip Morris Cos., Inc., 813 N.E.2d 476 (Mass. 2004).

Aspinall was based on the allegation that Phillip Morris had deceptively advertised that Marlboro Lights delivered less tar and nicotine than they in fact delivered. See id. at 481-82. In Aspinall, plaintiffs alleged that all Marlboro Lights purchasers suffered economic injury because defendant Phillip Morris's deceptive advertising claims enabled it to charge more for Marlboro Lights than it could have otherwise charged. See id. at 489. Defendants countered that plaintiffs were required to show proof that each class member had individually suffered economic injury. See id. at 486, 489. Defendants argued, for example, that some smokers might have purchased Marlboro Lights for reasons entirely unrelated to the deceptive advertising and not suffered any injury. See id. at 486. The SJC rejected defendants' arguments. It held that all class members had suffered "compensable injury" when they purchased the deceptively advertised cigarettes, regardless of their individual smoking habits or motivations for purchasing Marlboro Lights. Id. at 488.

More specifically, the SJC reasoned that all buyers "were injured when they purchased a product that, when used as directed, exposed them to substantial and inherent health risks that were not (as a reasonable consumer likely could have been misled into

believing) minimized by their choice of the defendants' 'light' cigarettes." Id. at 488. The court found that these purchasers all paid more than they would have paid for the Marlboro Lights if they had not been deceived. Id. at 487. However, in a footnote, the SJC added that "[t]he defendants' allegedly deceptive claims should be distinguished from other statements by manufacturers that their products deliver certain benefits (such as 'helps to lower cholesterol') where most consumers actually receive the promised benefit, as may be ascertained by objective tests." Id. at 489 n.21.

Loughlin's theory of class-wide economic injury is based on Aspinall. She contends Vi-Jon's "false and misleading label Representations caused uniform injury to consumers due to their overpayment for the misrepresented Products." Class Cert. Mem. at 21 (citing Geanacopoulos v. Philip Morris USA Inc., No. 98-6002-BLS1, 2016 WL 757536, at *15 (Mass. Super. Feb. 24, 2016)). In essence, Loughlin argues that all consumers who purchased Vi-Jon's Products bearing the Representation suffered a per se economic injury.

Since deciding Aspinall, the SJC "moved away from such a 'per se'" conception of injury, or at least clarified it. Rule, 607 F.3d at 254; see also Shaulis, 865 F.3d at 7-8. Starting in 2006 with Hershenow v. Enterprise Rent-A-Car, in 2006, the SJC has

repeatedly emphasized that proof of deceptive advertising or conduct alone does not establish the existence of a per se injury. See Hershenow, 840 N.E.2d at 533. Rather, a plaintiff "must demonstrate that even a per se deception caused loss." Id. at 533; see also id. at 535 ("A consumer is not[] entitled to redress under G.L. c.93A[] where no loss has occurred."). As the First Circuit wrote in Shaulis, "[t]o state a viable claim, the plaintiff must allege that she has suffered an 'identifiable harm' caused by the unfair or deceptive act that is separate from the violation itself." Shaulis, 865 F.3d at 10; see also Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 746 (Mass. 2013) (same).

The First Circuit's decisions in Rule and Shaulis illuminate the nature of this requirement. In Rule, a plaintiff alleged that she suffered an economic injury when she purchased a canine heartworm medication that presented undisclosed risks. See Rule, 607 F.3d at 251. Like Loughlin, Rule alleged that the heartworm medication was "worth less than she paid for it," and she requested damages "measured by the difference between what she paid and what she would have paid if the risk had been disclosed." Id. at 253. The First Circuit rejected this theory of injury. See id. at 253, 255. If Rule had not yet administered the medication, the court reasoned, she might have been able to establish injury by demonstrating that she was still holding a product worth less than

what she paid for it. See id. at 253. However, since Rule had administered the medication without incident, she received "both the protection and convenience she sought" without suffering any of the undisclosed risks. See id. at 253. Therefore, the First Circuit held that she did not suffer any loss. Id. at 255.

Unlike Rule, Loughlin "is still holding [] product[s]"--two bottles of Germ-X--that she contends are "worth less than she paid." Id. at 253 (emphasis in original). She has consequently provided evidence from which a reasonable jury could find that she has suffered an economic injury. See supra section III.D. However, the same is unlikely to be true for many putative class members. The proposed class is comprised of at least tens of thousands of individuals who purchased Vi-Jon's Products 3.5 to 7.5 years ago. See SAC ¶119. Many, if not most, of these individuals have likely used and disposed of the Products they purchased during the proposed class period. If they used those Products without contracting an illness from a hand-borne germ, they obtained "the protection and convenience [they] sought" and the risk from the fact that Germ-X does not kill 99.99% of germs "did not manifest itself in an injury" to them. Rule, 607 F.3d at 253. In addition, individuals who used all of the Germ-X they purchased no longer have a product that Loughlin contends is worth less than they paid. See id. at 253. Rule indicates that these putative class members

31

have not suffered any injury--an essential element of a Chapter 93A claim.

This conclusion is consistent with <u>Aspinall</u> in which, as explained earlier, the SJC wrote that "[t]he defendants' allegedly deceptive claims should be distinguished from other statements by manufacturers that their products deliver certain benefits (such as "helps to lower cholesterol") where most consumers actually receive the promised benefit, as may be ascertained by objective tests." <u>Aspinall</u>, 813 N.E.2d at 489 n.21. In this case, it is undisputed that Germ-X kills at least some germs on hands. There is no evidence that it does not kill the COVID-19 virus. Therefore, any putative class member who used all of the Germ-X he or she purchased and did not get COVID-19 or any other disease caused by germs on his or her hands would be similarly situated to Rule and, as in the <u>Aspinall</u> example, have received the benefit Vi-Jon promised.

This case is also analogous to <u>Shaulis</u>. In Shaulis, the plaintiff alleged that she had suffered economic injury after purchasing a deceptively advertised sweater at Nordstrom Rack. See <u>Shaulis</u>, 865 F.3d at 5. The sweater's price tag listed its sales price as $49.97 and a "Compare At" price of $218. See <u>id.</u> at 5. Shaulis alleged that the "Compare At" price falsely implied that a retailer had previously sold the sweater for $218, although

Nordstrom in fact sold many garments that were manufactured "for exclusive sale at its Nordstrom Rack stores." Id. at 5. Shaulis alleged that she had suffered an injury "because she was 'induced' to make a purchase she would not have made, but for the false sense of value created by Nordstrom's pricing scheme." Id. at 10. The First Circuit rejected this theory, stating that Shaulis had improperly "merge[d] the alleged deception with the injury" by "attempting to plead an assertion about [her] disappointed expectations of value in place of an allegation of real economic loss." Id. at 11 (emphasis added). Absent any proof that the sweater itself was "deficient in some objectively identifiable way," Shaulis had failed to prove that she had suffered an economic injury because she "arguably got exactly what she paid for, no more and no less." Id. at 12.

As in Shaulis, Vi-Jon asserts that many putative class members also got what they paid for and, therefore, did not suffer any injury. Specifically, Vi-Jon argues that many consumers purchased its Products to kill the COVID-19 virus--a virus that, Vi-Jon maintains, its Products "indisputably" kill, see Opp. to Class Cert. at 13-15--and "not because of the alleged understanding that [the Products] will kill 99.99% of all germs that can be found on hands." Id. at 20, 21.

Vi-Jon's contention is correct. Because Massachusetts courts do not now employ the per se theory of economic injury on which Loughlin relies, in the circumstances of this case she must demonstrate that each putative class member suffered a "separate, identifiable harm" caused by, and distinct from, the deceptive Representation. See Tyler, 984 N.E.2d at 746.[7] That is, Loughlin must demonstrate that each putative class member suffered "real loss grounded in some objective measure." Shaulis, 865 F.3d at 13.

In view of the COVID-19 pandemic, it is plausible that many putative class members purchased Vi-Jon's Products to kill the COVID-19 virus and not because they expected the Products to kill 99.99% of all germs found on hands. See, e.g., Piescik v. CVS Pharmacy, Inc., 576 F.Supp.3d 1125, 1133 (S.D. Fla. 2021) (stating that "in March 2020, [] consumers were desperately trying to purchase whatever hand and other cleaning Products they could find"). Vi-Jon has provided evidence that its Products are highly effective at killing the COVID-19 virus. See Opp. to Class Cert. at 2; Van Trump Report at 25-26 (Dkt. No. 118-4). Loughlin has not

---

[7] Moreover, "[e]very class member must have Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." Transunion, 141 S.Ct. at 2208 (internal quotation marks and citation omitted).

offered evidence to dispute this assertion.[8] See, e.g., Decl. of Elizabeth A. Fortunato (Dkt. No. 97-2) (opining on germs that alcohol-based hand sanitizer cannot effectively kill without mentioning the COVID-19 virus). The court, therefore, finds that Vi-Jon's Products effectively kill the COVID-19 virus.

A consumer who purchased Vi-Jon's Products primarily or exclusively to kill the COVID-19 virus has, therefore, "received everything they had bargained for," Shaulis, 865 F.3d at 11, as well as the "protection and convenience" that he or she sought, Rule, 607 F.3d at 253. There is no evidence that any such consumer has suffered "real economic loss," as a result of getting COVID-19 or any other disease caused by germs on hands after using the Products, as required to satisfy the injury element of a Chapter 93A claim. See Shaulis, 865 F.3d at 11. Moreover, since the proposed class includes the first five to six months at the beginning of the COVID-19 pandemic, it likely includes a substantial number of uninjured members who purchased Vi-Jon's products primarily or exclusively to kill the COVID-19 virus. See Piescik, 576 F.Supp.3d at 1133.

---

[8] Loughlin has stated that "there are no facts before the Court that the Germ-X Products kill the COVID-19 virus." Pl. Opp. to Def. SUMF ¶16. However, she has not moved to exclude Van Trump's opinion providing evidence that Germ-X is effective at killing the COVID-19 virus. Moreover, Loughlin has not offered evidence that Germ-X does not effectively kill the COVID-19 virus.

Nevertheless, the court may certify a class containing a <u>de minimis</u> number of uninjured members if there is an administratively feasible mechanism for identifying and excluding them from the class before trial. <u>See</u> <u>Asacol</u>, 907 F.3d at 52. Loughlin has not proposed any such mechanism because she erroneously relies on a <u>per se</u> theory of injury and asserts that the proposed class does not contain any uninjured members. <u>See</u> Class Cert. Mem. at 3, 25. Rather, as explained earlier, she argues that "consumers were injured at the moment they spent money to buy the misrepresented Products." Pl.'s Supp'l Brief at 8. The court could deny Loughlin's motion for class certification on this basis alone.

However, the court has considered whether it would be possible to identify and exclude uninjured class members by modifying Loughlin's proposed method for ascertaining who is in the putative class. Loughlin contends that class membership can be ascertained by reviewing the business records of Vi-Jon and its third-party sellers, and through self-identification and consumer attestation. <u>See</u> Class Cert. Mem. at 17; Pl.'s Supp'l Brief at 5. However, business records will not show whether the purchaser still has the purchased Product. <u>See</u> <u>Rule</u>, 607 F.3d at 253. Nor will they show whether the purchaser did not get the protection he or she paid for. <u>See</u> <u>Shaulis</u>, 865 F.3d at 12-13. It would, therefore, be necessary to rely on consumer affidavits to determine whether

putative class members suffered an injury-in-fact. <u>See</u> Class Cert. Mem. at 17; <u>Nexium</u>, 777 F.3d at 20.

The First Circuit has held that injury can be established by unrebutted testimony or affidavits. <u>See</u> <u>Asacol</u>, 907 F.3d at 52; <u>Nexium</u>, 777 F.3d at 20-21. Loughlin estimates that there will be tens of thousands of class members, if not more. <u>See</u> Class Cert. Mem. at 2. The court may not deny Vi-Jon the right to litigate its defenses against the claims of each putative class member. <u>See</u> <u>Asacol</u>, 907 F.3d at 54; <u>Wal-Mart Stores</u>, 131 S.Ct. at 2561. Vi-Jon has stated its intent to challenge any affidavits that Loughlin proposes to use to establish that a consumer suffered an injury-in-fact and, therefore, is a member of the proposed class. <u>See</u> Opp. to Class Cert. Mem. at 21. Therefore, it is foreseeable that vi-Jon will raise plausible, potentially meritorious, individual challenges concerning whether thousands of putative class members used all of the Product(s) they purchased without contracting COVID-19 or any other disease that could be caused by germs on hands and, as a result, received the benefit of their bargain without incurring any economic loss.

As indicated earlier, the requirement of individualized proof of injury will not always defeat a motion for class certification. <u>See</u> <u>Asacol</u>, 907 F.3d at 60 (Barron, J., concurring). If the inquiry only involves a <u>de</u> <u>minimis</u> number of potentially uninjured class

members, class certification may be appropriate. Id. (citing Nexium, 777 F.3d at 21). However, the court now finds that in view of the foreseeable very large number of plausible challenges to an essential element of a valid Chapter 93A claim, individual issues will overwhelm common ones. Id. (citing Nexium, 777 F.3d at 21).

Therefore, Loughlin has failed to satisfy the predominance requirement of Rule 23(b)(3).

2. Rule 23(a)

The court must deny Loughlin's motion for class certification because she has not satisfied Rule 23(b)(3)'s predominance requirement. See Smilow, 323 F.3d at 38. Nevertheless, in the interest of completeness, the court has also conducted a Rule 23(a) analysis. The proposed class satisfies Rule 23(a)'s numerosity requirement. The court also concludes that Loughlin would be a minimally adequate class representative, if the court were to certify a class. However, because the class likely contains a substantial number of uninjured class members, it does not satisfy Rule 23(a)'s commonality or typicality requirements.

a. Numerosity

Rule 23(a)(1)'s numerosity requirement is usually satisfied if the proposed class contains over 40 members. See DeRosa v. Massachusetts Bay Commuter Rail Co., 694 F.Supp.2d 87, 98 (D. Mass. 2010) (Wolf, J.); see also § 3:12, 1 Newberg and Rubenstein on

Class Actions §3:12 (6th ed.) ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone."). As noted earlier, Loughlin asserts that "[t]he proposed class includes at least tens of thousands of purchasers of Defendant's relatively low-cost Products." Class Cert. Mem. at 11. Vi-Jon does not dispute this claim. Therefore, the proposed class satisfies Rule 23(a)(1)'s numerosity requirement.

       b. Commonality and Typicality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class" and Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The commonality and typicality analyses "tend to merge," since "[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Gen. Tel. Co. v. Falcon, 102 S.Ct. 2364, 2370 n.13 (1982).

To satisfy the commonality requirement, a plaintiff must "demonstrate that the class members 'have suffered the same injury.'" Wal-Mart Stores, 131 S.Ct. at 2551 (quoting Falcon, 102 S.Ct. at 2370). As the Supreme Court wrote in Wal-Mart Stores:

    What matters to class certification . . . is not the raising
    of common "questions"—even in droves—but rather, the capacity

> of a class-wide proceeding to generate common answers apt to
> drive the resolution of the litigation. Dissimilarities
> within the proposed class are what have the potential to
> impede the generation of common answers.

Id. (quoting Richard A. Nagareda, Class Certification in the Age
of Aggregate Proof, 84 N.Y.U. L. REV. 97, 132 (2009)).

Similarly, to satisfy the typicality requirement, the class
representative's claims must "arise from the same event or practice
or course of conduct that gives rise to the claims of other class
members, and are based on the same legal theory." Garcia-Rubiera
v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (internal quotation
marks and alterations omitted) (quoting In re Am. Med. Sys., Inc.,
75 F.3d 1069, 1082 (6th Cir. 1996)); see also 1 Newberg and
Rubenstein on Class Actions, §3.29 (6th ed.) ("[T]ypicality
determines whether a sufficient relationship exists between the
injury to the named plaintiff and the conduct affecting the class
so that the court may properly attribute a collective nature to
the challenged conduct.").

Three issues of law and fact are common to the proposed class.
First, all members of the proposed class were exposed to the same
Representation on Vi-Jon's Products. See Mot. for Class Cert. at
1. Second, under Massachusetts law, the jury will determine whether
the Representation is deceptive by applying an objective,
reasonable consumer standard. See Dumont, 934 F.3d at 40. Third,
the jury will also apply an objective, reasonable consumer standard

40

when assessing the causality element of Loughlin's Chapter 93A claim. See Casavant, 952 N.E.2d at 912. Because both of these legal issues are analyzed under an objective, reasonable consumer standard, they are susceptible to common proof and can be resolved on a class-wide basis.

The court nevertheless finds that Loughlin has not satisfied Rule 23(a)'s commonality and typicality requirements because, as discussed with regard to the Rule 23(b)(3) predominance requirement, it is likely that a substantial number of putative class members have not suffered an economic injury. Therefore, Loughlin has failed to demonstrate that all class members "have suffered the same injury." Wal-Mart Stores, 131 S.Ct. at 2551; Falcon, 102 S.Ct. at 2370. Similarly, Loughlin is not "typical" of putative class members who have not suffered any injury, since these members do not have viable Chapter 93A claims against Vi-Jon. See Garcia-Rubiera, 570 F.3d at 460.

c. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Class representatives are not required to have 'expert knowledge' about the case, and may rely heavily on class counsel for guidance." In re Dial Complete Mktg. & Sales Pracs. Litig., 312 F.R.D. 36, 55 (D.N.H. 2015) (citing In re Relafen

41

Antitrust Litig., 231 F.R.D. 52, 69 (D. Mass. 2005) (Young, J.)).
"A perceived lack of subjective interest is ordinarily
insufficient to disqualify proposed class representatives." Id. at
55 (internal quotation marks omitted). However, an adequate class
representative must be able to protect the interests of the class
from possible conflicts with class counsel and not abdicate control
of the case to their attorneys. See Kirkpatrick v. J.C. Bradford
& Co., 827 F.2d 718, 728 (11th Cir. 1987) (noting that class
certification has properly been denied "where the class
representatives had so little knowledge of and involvement in the
class action that they would be unable or unwilling to protect the
interests of the class against the possibly competing interests of
the attorneys"); cf. In re Tyco Int'l, Ltd., No. MD-02-1335-PB,
2006 WL 2349338, at *2 (D.N.H. Aug. 15, 2006) ("The adequacy
requirement is satisfied 'unless the class representatives'
participation is so minimal that they virtually have abdicated to
their attorneys the conduct of the case.'" (quoting Kirkpatrick,
827 F.2d at 728)).

The First Circuit utilizes a two-part inquiry to determine if
a class representative is adequate. See Andrews v. Bechtel Power
Corp., 780 F.2d 124, 130 (1st Cir. 1985). First, the court must
determine whether there is a potential for conflict between the
interests of the representative party and any of the class members.

See id. "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." Matamoros v. Starbucks, Corp., 699 F.3d 129, 138 (1st Cir. 2012) (quoting 1 Newberg and Rubenstein on Class Actions §3:58 (5th ed.)). Second, the court must determine whether there is an assurance of vigorous prosecution of the action. See Andrews, 780 F.2d at 130. A plaintiff may satisfy this requirement by demonstrating that the proposed class counsel is "qualified, experienced and able to vigorously conduct the proposed litigation." Id. at 130.

Although the court has two concerns about whether Loughlin is willing and able to serve as an adequate class representative, it finds that Loughlin would be a minimally adequate representative of the putative class. First, one of Loughlin's attorneys, Mr. Manchur, is a friend of her father's. See Loughlin Dep. Tr. 55:11-58:4. This friendship led to Loughlin becoming the plaintiff in this case. See id. 56:19-58:11. Loughlin's father's relationship with Mr. Manchur might make it difficult for her to advocate for the interests of the class if they conflict with the interests of class counsel concerning, for example, what percentage of any common fund should be awarded to class counsel if a class were certified and resulted in a common fund to be divided between class members and their counsel. See, e.g., Arkansas Tchr. Ret. Sys. v.

State St. Bank & Tr. Co., 512 F. Supp. 3d 196, 235 (D. Mass. 2020), aff'd in part, appeal dismissed in part sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp., 25 F.4th 55 (1st Cir. 2022).

Second, the court ordered Loughlin to be present at the March 13, 2024 hearing. See Feb. 29, 2024 Order (Dkt. No. 161). However, she stated that she was unable to do so because of a prior work commitment, see Mot. to Waive Pl.'s Appearance (Dkt. No. 167), and was excused, see Mar. 12, 2024 Order (Dkt. No. 171). The fact that Loughlin has been seeking to represent a putative class but was unwilling to miss a day or two of work for the sole hearing at which her presence was ordered causes the court to be concerned that she does not understand that she cannot abdicate the conduct of this case to her counsel. See Kirkpatrick, 827 F.2d at 728.

Nevertheless, neither of these concerns cause the court to conclude that "fundamental" conflicts of interest would exist between Loughlin and members of the proposed class. See Matamoros, 699 F.3d at 138; see also Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd., 247 F.R.D. 253, 265 (D. Mass. 2008) (Saris, J.) (noting that "speculative conflict should be disregarded at the class certification stage"). In addition, Loughlin's counsel has extensive experience litigating consumer protection class actions and deceptive marketing claims. See Spector Decl. in Supp. of Mot. for Class Cert., Exs. 29, 30 (Dkt. Nos. 97-29, 97-30). The court

44

finds that proposed class counsel are qualified and "able to vigorously conduct the proposed litigation." Andrews, 780 F.2d at 130. In view of the foregoing, the court finds that Loughlin would satisfy Rule 23(a)(4)'s adequacy requirement. However, this issue is moot because the proposed class is not being certified.

V.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Vi-Jon's motion to exclude plaintiff's microbiology expert (Dkt. No. 119) is DENIED.

2. Vi-Jon's motion for summary judgment (Dkt. No. 83) is DENIED.

3. Loughlin's motion for class certification (Dkt. No. 95) is DENIED.

4. Loughlin's motion to compel defendant to produce discovery (Dkt. No. 80) is DENIED as moot, and, in any event, is unmeritorious.

5. Vi-Jon's motion to exclude plaintiff's damages expert (Dkt. No. 116) is DENIED as moot.

6. Vi-Jon's motion to exclude plaintiff's survey expert (Dkt. No. 122) is DENIED as moot.

7. Loughlin shall, by April 16, 2024, report whether she has, pursuant to Fed. R. Civ. P. 23(e), petitioned the First Circuit for permission to appeal the denial of her motion for class

certification. If Loughlin has not sought permission to appeal, the parties shall confer and, by May 1, 2024, report whether they have reached an agreement to resolve this case. If they have not, they shall then propose a schedule for litigating it to a conclusion. The case is otherwise STAYED.

UNITED STATES DISTRICT JUDGE